IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | ) | |
|---|---|---|
| David Wooley, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 14 C 5757 |
| | ) | |
| Bridgeview Bank Mortgage Company, LLC, | ) | Judge Virginia M. Kendall |
| | ) | |
| Defendant. | ) | |

# **MEMORANDUM OPINION AND ORDER**

Plaintiffs David Wooley, Brian Leonard, and Dana Self, on behalf of themselves and all others similarly situated, instituted this action against Defendant Bridgeview Bank Mortgage Company, alleging that Bridgeview failed to properly pay its Mortgage Loan Officers ("MLOs") straight and overtime pay. Specifically, the Plaintiffs three-count Amended Complaint alleges violations of the Kansas Wage Payment Act ("KWPA"), K.S.A. § 44-313, *et seq.*, the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1, *et seq.*, and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, stemming from Bridgeview's failure to pay its MLOs for hours worked in excess of forty per week. Bridgeview now moves to dismiss the Plaintiffs' IMWL claim for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), arguing that the IMWL does not apply to the Plaintiffs because they worked exclusively in Kansas. Because the IMWL does not apply extraterritorially, the Court grants Bridgeview's motion (Dkt. No. 48) and dismisses the Plaintiff's IMWL claim without prejudice.

## BACKGROUND

The Court takes the following allegations from the Amended Complaint and treats them as true for purposes of this motion. *See Welton v. Anderson*, 770 F.3d 670, 672 (7th Cir. 2014). Plaintiffs Wooley, Leonard, and Self worked as MLOs for Bridgeview in Overland Park, Kansas from 2013 to 2014. (Dkt. No. 47, Am. Compl. ¶¶ 6, 11-13). The Plaintiffs reside in either Kansas or Missouri. (*Id.* at ¶¶ 11-13). Bridgeview is a mortgage lending and banking company formed under Delaware law with its principal place of business in Illinois. (*Id.* at ¶ 14). Bridgeview conducts its business throughout the United States, but the Plaintiffs signed employment agreements with Bridgeview designating Illinois law as the law of choice between them. (*Id.* at ¶¶ 2, 8 n.1). The Plaintiffs allege that Bridgeview refuses to allow its MLOs to report all hours worked in excess of forty per week. (*Id.* at ¶ 3).

MLOs in the Kansas City office received supervision from Branch Manager Dustin Lentz, Midwest Regional Director of Sales Pablo Cortes, and President of Retail Mortgage Production Todd Jones. (*Id.* at ¶ 28). Lentz worked in Kansas while Cortes and Jones operated out of Bridgeview's corporate office in Illinois. (Am. Compl. Ex. A). Lentz informed the Kansas City MLOs that all policies regarding compensation and record keeping were passed down from Bridgeview's corporate location. (Am. Compl. ¶ 29). MLOs had to work at least eight office hours each day but were not permitted to submit timesheets documenting more than forty hours worked in a week. (*Id.* at ¶¶ 30, 33, 38). Bridgeview also required the MLOs to work evenings and weekends, even though hours worked over forty would not be credited. (*Id.* at ¶¶ 35-37). Specifically, the Plaintiffs' supervisors encouraged them to "invest 2 late nights a week at a minimum, along with a couple of weekend hours Saturday and Sunday." (*Id.* at ¶ 38).

**LEGAL STANDARD**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to "state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). All well-pled facts are taken as true and viewed in the light most favorable to the plaintiff, *Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741, 742-43 (7th Cir. 2010), but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**DISCUSSION**

Bridgeview moves to dismiss the Plaintiffs' IMWL claim for unpaid and overtime wages, contending that the alleged activity took place in Kansas and that the IMWL therefore does not apply. When analyzing a claim under Illinois law, this Court must "take [Illinois law] as it exists." *Bridewell v. Eberle*, 730 F.3d 672, 677 (7th Cir. 2013). Here, because the IMWL contains no indication that it applies beyond Illinois and the choice of law provision does not extend the IMWL's application, the Court grants Bridgeview's motion and dismisses Count II of the Plaintiffs' Amended Complaint without prejudice.

**I.     The IMWL Does Not Apply Extraterritorially**

In Illinois, a "statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill.2d 100, 184-85 (2005) (the Illinois Consumer Fraud and Deceptive Business Practices Act did

not apply extraterritorially because of the "long-standing rule of construction in Illinois" that a statute has no extraterritorial effect unless explicitly stated); *see also Kiobel v. Royal Dutch Petroleum Co.*, 133 S. Ct. 1659, 1664 (2013) (presumption against extraterritorial application applies to every statute Congress enacts, unless there is a "clear indication of an extraterritorial application.") (internal citations omitted).

Here, having read the "express provisions of the statute," the Court detects no "clear intent" that the IMWL have extraterritorial effect, particularly because the IMWL applies to "places of employment in the State of Illinois." *See* 820 ILCS 105/2. Instead, the Court concludes that the purpose of the IMWL is to guard employees in Illinois and not elsewhere. *See Glass v. Kemper Corp.*, 133 F.3d 999, 1000 (7th Cir. 1998) (finding it "inconceivable" that the Illinois Wage Payment and Collection Act had an extraterritorial reach because its "evident purpose is to protect employees *in Illinois* from being stiffed by their employers"). Because the IMWL is designed to protect employees within the State of Illinois only, it does not apply extraterritorially.

## II.  The Choice of Law Provision Does Not Expand the Reach of the IMWL

The Plaintiffs argue that even though the IMWL does not apply extraterritorially without evidence of such intent within the statute's language, the IMWL should nevertheless apply to this case because Bridgeview requires its employees to sign employment agreements with a choice of law provision selecting Illinois law. In essence, the Plaintiffs seek to apply the substantive portions of the IMWL but not the limitations related to territorial scope. While the parties do not dispute that the choice of law provision found in the Plaintiffs' employment agreements with Bridgeview is enforceable and designates Illinois law as the law to apply in the event of a dispute, this choice of law provision is ultimately irrelevant to the Court's analysis of

4

whether the IMWL applies extraterritorially. *See Generac Corp. v. Caterpillar Inc.*, 172 F.3d 971, 973 (7th Cir. 1999) (courts look to the law itself rather than to general choice of law rules to determine if a legislature intended a law to apply).

"[A] state's territorial limitations apply even when that state's law is selected for application by a choice-of-law provision." *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 385 (7th Cir. 2003); *see also Highway Equip. Co. v. Caterpillar Inc.*, 908 F.2d 60 (6th Cir. 1990) (Illinois Franchise Disclosure Act did not apply to Ohio franchisee because it was enacted for protection of Illinois residents only, even though contract designated Illinois law as law of choice); *Peugeot Motors of Am., Inc. v. E. Auto Distrib., Inc.*, 892 F.2d 355 (4th Cir. 1989) (New York regulatory law did not apply to distributor agreement containing New York choice of law provision because distributor had never done business in New York). The plain language of the IMWL only encompasses Illinois employees. This territorial limitation is unaffected by the parties' choice of law provision designating Illinois law. *See Cromeens*, 349 F.3d at 386 ("if they insist . . . that Illinois law applies, then we must look to the law of Illinois to determine the scope of application"). The IMWL limits its scope to employees located within the state. Accordingly, the Plaintiffs may not claim its protections.

### III. The Alleged Conduct Did Not Occur in Illinois

Even if the IMWL could apply to employees residing and working outside of Illinois, the statute would only plausibly apply here if the alleged conduct occurred in Illinois. *See Avery*, 216 Ill.2d at 187 (without intent of extraterritorial application, the Illinois Consumer Fraud and Deceptive Business Practices Act would only apply to the plaintiff's claims if the consumer transactions took place in Illinois); *Glass*, 133 F.3d at 1000 (non-resident plaintiff who performed no work in Illinois could not state a claim for Illinois Wage Payment and Collection

Act violations). Acknowledging as much in their response brief, the Plaintiffs contend that Bridgeview's failure to pay overtime and credit the Plaintiffs' hours worked per week occurred in Illinois. Specifically, they argue that their allegations that Bridgeview maintains its principal place of business in Illinois and created policies within Illinois that applied to the Plaintiffs outside the state are sufficient to establish that the IMWL applies to their claims. But because nearly every circumstance leading to the Plaintiffs' alleged injuries occurred in Kansas, the IMWL provides no avenue for relief.

Although "the place where a company policy is created or where a form document is drafted may be a relevant factor to consider in determining the location" of conduct, it is insufficient by itself to demonstrate that the conduct occurred in the location. *Avery*, 216 Ill.2d at 187; *see also Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 397 (7th Cir. 2009) (fact that defendant maintained a "home office" in Illinois was not enough to confer non-resident rights under the Illinois Consumer Fraud and Deceptive Business Practice Act). Here, the "overwhelming majority of circumstances" related to the alleged unpaid wages took place in Kansas for the named Plaintiffs. *See Avery*, 216 Ill.2d at 187.

All violations of the Plaintiffs' rights took place in Kansas. The Plaintiffs reside in either Kansas or Missouri, not Illinois. The Plaintiffs worked in Overland Park, Kansas. They reported their hours there, were paid there, and were allegedly undercompensated there. Damage to the Plaintiffs, if any, occurred in Kansas. The fact that Bridgeview maintains its principal place of business in Illinois and created compensation and reporting procedures from Illinois is not enough to demonstrate that the IMWL should apply to the out-of-state employees. *See Glass*, 133 F.3d at 1000 (Illinois Wage Payment and Collection Act did not apply extraterritorially to non-resident plaintiff, even though "the employer defendants have their principal places of

business in Illinois, and are therefore 'employers . . . in this State' "); *Avery*, 216 Ill.2d at 189-90 (the Illinois Consumer Fraud and Deceptive Business Practices Act did not apply extraterritorially although defendant was headquartered in Illinois and the scheme to defraud "emanated" from Illinois). Because the vast majority of the circumstances relating to the Plaintiffs' alleged underpayment transpired outside of Illinois, the Plaintiffs have no cognizable action under the IMWL.

## CONCLUSION

For the reasons stated herein, the Court grants Bridgeview's motion to dismiss. Count II of the Plaintiffs' Amended Complaint is dismissed without prejudice.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: 1/23/2015